IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **DWIGHT LEMAN FIELDS,** *Plaintiff*, <br><br> v. <br><br> **PAUL FOSTER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, MARTHA I. MONTALVO, IN HER OFFICIAL CAPACITY AS CHIEF OF POLICE, AND THE CITY OF HOUSTON,** <br><br> *Defendants*. | CIVIL ACTION NO. 4:16-cv-03542 <br><br><br> JURY TRIAL REQUESTED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff DWIGHT LEMAN FIELDS files this Original Complaint against Defendants PAUL FOSTER, MARTHA I. MONTALVO, and the CITY OF HOUSTON and allege and state as follows:

**I.
PARTIES**

1.      Plaintiff, DWIGHT LEMAN FIELDS ("FIELDS"), is an individual and resident of Harris County of Houston, Texas.

2.      Defendant, PAUL FOSTER ("FOSTER"), was at all relevant time herein an individual and police officer with the City of Houston Police Department ("HPD").  His badge number is 8224 and is assigned to Tactical Operations – K9.  He may be served at his place of business located at 5005 Little York Rd., Houston, TX 77016 on any day except Monday or Tuesday between the hours of 2 pm and 10 pm.

1

3. Defendant, MARTHA I. MONTALVO ("MONTALVO"), was at all relevant time herein the acting Chief of Police for the City of Houston Police Department ("HPD"). She may be served at her place of business located at Houston Police Department Headquarters located at 1200 Travis St., Houston, TX 77002.

4. Defendant the CITY OF HOUSTON ("the CITY") is an incorporated city within the State of Texas. Pursuant to TEX. CIV. PRAC. & REM. CODE §17.024(b), it may be served with process by serving this Complaint and Summons on Hon. Sylvester Turner, City of Houston Mayor, or on Anna Russell, City of Houston Secretary, at City of Houston City Hall, 901 Bagby Street, Houston, Texas 77002.

## II.
## JURISDICTION & VENUE

5. This Court has federal question jurisdiction under 28 U.S.C. §1331 because this action arises under 42 U.S.C. §§ 1981, 1983, and 1988, as well as under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and the federal laws.

6. This case involves the deprivation of Plaintiff's constitutional rights by Defendants as state actors and/or under color of state law which included, but is not limited to, deprivation of FIELDS' liberty and freedom interest from excessive and unreasonable force, unreasonable seizure, racial profiling, and finally — failure to intervene, train, discipline, and supervise the Houston Police Officers on the scene.

7. Venue is proper in the Southern District of Texas because the events giving rise to the claims asserted herein occurred within this District.

8. All conditions precedent to bring this action have occurred and/or have been performed.

9. The CITY obtained actual knowledge of the events that occurred when FIELDS filed a claim with the City Attorney's Office on September 26, 2016. The claim was assigned to Mr.

Miguel Contreras, Senior Claims Coordinator — City File No. 1001600772001.  On November 30, 2016, the CITY offered to settle all Plaintiff's claims for $2,580.00.  Plaintiff rejected this offer.

10.     FIELDS also filed an Internal Affairs Complaint with HPD on November 11, 2016.  The Complaint was assigned to Sergeant Matthew Williams of the Internal Affairs Division – IRF# 50723-2016.

11.     FIELDS gave proper and timely notice to Defendants in compliance with the requirements of the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE §101.101(a) and (b), and in compliance with the time-period specified by the City of Houston Charter, Article IX, §11, by providing written notice to the CITY of the incident, the time and place of the incident, and the damage or injury claimed, within ninety (90) days of the incident occurring.

**III.
STATEMENT OF FACTS**

12.     On the afternoon of September 15, 2016, Houston Police Department ("HPD") officers were involved in a car chase after the driver of a white car refused to pull over after running a series of stop signs on Dunlap Street near Hillcroft and Braeswood.  The car chase ended on or around 4:15 pm after the suspect's car blew a tire in the middle of Sandy Glen Lane.  It was then the suspect began to flee on foot.

13.     Numerous HPD officers searched for the suspect in the 8300 block of Furlong and Sandy Glen Lane.  HPD Patrol Officers Z. D. Brumley and F. Castro described the suspect as an African-American male with shoulder length dreadlocks and wearing a white shirt and blue pants.  HPD's K9 unit was called to help apprehend the suspect.

14. The local news affiliate Channel 2 ("Click 2 Houston") broadcast the car chase live and Channel 2's Phil Archer reported from the scene.[1]  Archer reported that a homeowner had been bitten by a police K9, but incorrectly characterized FIELDS' wounds as "very minor."[2]

15. FIELDS, an African-American male who is 44 years old, bald, thin, and stands 5'10," lives in the surrounding neighborhood at 8118 Furlong, Houston, TX 77071.  On September 15, 2016, he was wearing blue shorts and a white tank top.

16. During the chase, FIELDS was visiting his friend and neighbor, Lynn Berry ("Berry"), who lives at 8366 Sandy Glen Lane, Houston, TX 77071.  They were standing in Berry's driveway, completely unaware the chase was underway, when they heard the police sirens and saw the suspect's car driving toward them at a high rate of speed.

17. Numerous HPD vehicles and officers converged on the chaotic scene as FIELDS and Berry watched.  After the blown tire disabled the suspect's car near Berry's house, the suspect fled and ran in the direction of Berry's house.

18. An HPD officer yelled at FIELDS and Berry to stop the suspect from getting away, but the suspect had already jumped Berry's fence.  HPD officers pursued the suspect over Berry's fence and damaged it in the process.

19. With his HPD K9, FOSTER began to approach FIELDS even though he was not acting suspicious, was not in the act of fleeing, and did not match the suspect's physical description. FIELDS raised his arms in the air and repeatedly pleaded, "I'm not the guy!  I'm not the guy!" FOSTER ignored FIELDS' pleas.  Sensing FOSTER's aggressive and threatening manner along with the presence of the K9, FIELDS jumped on the hood of Berry's 2008 GMC Denali SUV to

---

[1] http://www.click2houston.com/news/police-searching-for-chase-suspect-in-sw-houston#
[2] *Id.*

avoid the K9.  FIELDS continued to scream that he was not the suspect as his hands remained raised in the air.  Without warning, FOSTER tackled FIELDS from behind, put him in a choke hold, and threw him onto the driveway.  FOSTER then ordered or permitted the K9 to attack FIELDS.  The dog repeatedly bit and clawed FIELDS on his groin area, on his side, his back, and his leg.  FIELDS screamed in terror and in pain, and pleaded with the officers to subdue the K9.  Eyewitnesses said the dog continued to attack and bite FIELDS for one to two minutes.  Understandably, FIELDS believed he was going to die from the vicious dog's relentless attack.

20.     Officers eventually pulled the K9 off and called an ambulance due to the severe extent of FIELDS' puncture wounds and lacerations.

21.     Bleeding and torn up, FIELDS was rushed by ambulance to the ER at Memorial Hermann Southwest Hospital.  Physicians treated him by administering four (4) staples to his groin area, one (1) staple to his leg as well as bandages and dressing to the other wounds.  He was given two (2) prescriptions - Tylenol with Codeine and Amoxicillin - and released from the hospital.

22.     Due to his physical injuries, FIELDS was unable to work his normal construction job for three to four weeks following the attack.  To date, FIELDS has roughly $6,000 in medical bills.  FIELDS is unable to pay these medicals bills and is already receiving calls from debt collection agencies.

23.     HPD's Lt. Albert Mihalco, supervisor of the K9 unit, later admitted that a "mistake" had been made and explained that it was the result of a "training issue."

24.     HPD's Sgt. Stuart Red, FOSTER's supervisor, was on the scene and has been a member of HPD's K9 unit since 2002.  He personally apologized to FIELDS for the incident and returned the following day to fix Berry's damaged fence.

25.  While HPD refused to provide FIELDS a detailed incident report following the attack, it did provide a redacted report #1184738-16. When FIELDS officially requested a more detailed report from HPD's Open Records Division, HPD refused stating the investigation into the fleeing suspect was "still open" and that he would need to file a subpoena in order to access the full, unredacted report.

26.  Family members and close friends noticed FIELDS acting out of character following the attack. They observed how he rarely left his house, never traveled alone even for work or a quick errand, and demonstrated unpredictable mood swings and outbursts. He became withdrawn, paranoid, and depressed. He became unmotivated to work and encountered difficulty sleeping as he could not stop re-living the incident. Eventually, they encouraged FIELDS to seek psychological evaluation and treatment; he did.

27.  Dr. Sergio Henao, a certified psychiatrist, evaluated FIELDS and diagnosed him with both severe post-traumatic stress disorder ("PTSD") and major depressive disorder as a direct result of the trauma. During his evaluation, Dr. Henao administered the Quick Inventory of Depressive Symptomatology (QIDS SR-16). FIELDS scored 26 out of 27 which qualifies as "very severe depression." In all reasonable medical probability, FIELDS will continue to suffer these disorders into the foreseeable future. Dr. Henao prescribed two medications to help treat these disorders: (1) an SSRI drug for his depression, and (2) a psychotropic drug for his PTSD.

IV.
## CAUSES OF ACTION

**COUNT 1:   CLAIM UNDER 42 U.S.C. § 1983 AS TO DEFENDANT FOSTER – UNREASONABLE SEIZURE.**

28. The factual allegations contained in the paragraphs of this Original Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect if set forth verbatim pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

29. Defendant FOSTER violated FIELDS' clearly established rights under the Fourth Amendment of the United States Constitution when he violated his right to be kept free from "unreasonable seizure." 42 U.S.C. § 1983.

30. Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

31. Even though the Fourth Amendment protects against unreasonable searches and seizures, the Supreme Court has held the police may stop and briefly detain a person for investigative purposes if they have a "reasonable suspicion" that criminal activity may be afoot, even if they lack "probable cause" under the Fourth Amendment. *Jamison v. City of Shreveport*, 2016 WL 3920439, (W.D. LA 2016) (Citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

32. In this case, FOSTER did not have a "reasonable suspicion" as he deprived FIELDS' of his right from "unreasonable seizure" when:

   i.   he released the police K9 on Plaintiff even though Plaintiff was not a suspect in the ongoing police action;

   ii.  he released the police K9 on Plaintiff without warning;

7

    iii.    he released the police K9 even though Plaintiff did not match the physical description of the suspect the police were pursuing (the suspect had long dreadlocks while Plaintiff is bald);

    iv.    he released the police K9 on Plaintiff even though Plaintiff was not fleeing or attempting to evade arrest;

    v.    he released the police K9 on Plaintiff even though Plaintiff was clearly unarmed and posed no visible threat;

    vi.    he instructed the police K9 to "bite and hold" Plaintiff even though Plaintiff was not resisting arrest;

    vii.    he allowed the police K9 to "bite and hold" Plaintiff for one to two minutes even though it was clear that Plaintiff was laying on the ground in a defenseless position and did not present an immediate threat of harm;

    viii.    he choked, tackled, and threw Plaintiff to the ground without verbal warning, reasonable suspicion, or provocation.

33. Officer FOSTER did not have either the "reasonable suspicion" or the "probable cause" to detain FIELDS, and therefore violated FIELDS' Fourth Amendment right to be kept free from "unreasonable seizure."

**COUNT 2:  CLAIM UNDER 42 U.S.C. § 1983 AS TO DEFENDANT FOSTER — UNREASONABLE, UNNECESSARY, AND EXCESSIVE FORCE.**

34. The factual allegations contained in the paragraphs of this Original Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect if set forth verbatim pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

35. Defendant FOSTER deprived FIELDS' clearly established rights under the Fourth Amendment of the United States Constitution when he violated his right from the use of "unreasonable, unnecessary, and excessive force." 42 U.S.C. § 1983.

8

36. To prevail in a claim for "excessive force" under the Fourth Amendment, "plaintiffs must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). (Stating "whether the force used is excessive or unreasonable depends on the 'facts and circumstances of each particular case.'") Even though the Plaintiff was an innocent bystander, he suffered potentially life-threatening physical and mental injuries.

37. In evaluating whether the officer acted reasonably in the use of force, one must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (stating the *Graham* factors which examined the "calculus of reasonableness" and allowed "for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.") In this instance, because there was no underlying crime for which the Plaintiff was an actual suspect, the severity is nil. Additionally, the Plaintiff was not resisting arrest nor was he attempting to evade arrest by flight. Thus, per the *Graham* factors, the use of force was clearly unreasonable. *Id.*

38. Specifically, FOSTER deprived FIELDS' right from "unreasonable, unnecessary, and excessive force" when he

  i. released the police K9 on Plaintiff even though Plaintiff was not a suspect in the ongoing police action;

  ii. released the police K9 on Plaintiff without warning;

  iii. released the police K9 even though Plaintiff did not match the physical description of the suspect the police were in pursuit of;

9

    iv.    released the police K9 on Plaintiff even though Plaintiff was not fleeing or attempting to evade arrest;

    v.    released the police K9 on Plaintiff even though Plaintiff was clearly unarmed and posed no visible threat;

    vi.    instructed the police K9 to "bite and hold" Plaintiff even though Plaintiff was not resisting arrest;

    vii.    allowed the police K9 to "bite and hold" Plaintiff for 1-2 minutes even though it was clear that Plaintiff was laying on the ground in a defenseless position.

    viii.    Choked and tackled Plaintiff from behind and threw him to the ground despite not attempting to flee.

39.    Even if Plaintiff was the actual suspect of the car chase, the *Graham* factors still show FOSTER's assault and battery and subsequent K9 attack to be objectively unreasonable because the underlying crime was a failure to stop and the safety of other officers was not at issue. *Calton v. City of Garland*, 2004 WL 2965005 (N.D. Tex. Dec. 10, 2004) (holding that "officer's release of a police dog on a suspect of a misdemeanor traffic offense who is making no threatening actions and is not actively resisting at the time of the release was objectively unreasonable.")

**COUNT 3:    CLAIM UNDER 42 U.S.C. § 1983 AS TO THE CITY OF HOUSTON – FAILURE TO INTERVENE.**

40.    The factual allegations contained in the paragraphs of this Original Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect if set forth verbatim pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

41.    Defendant FOSTER's assault and battery and his inappropriate use of the police K9 constitutes a constitutional violation of excessive force.

42.    Defendant FOSTER, and other HPD officers employed by the CITY including FOSTER's immediate supervisor in the K9 division – Sgt. Stuart Red, failed to protect FIELDS from restraint

and the exercise of unreasonable, deadly force while having the opportunity, ability, and duty to do so.

43. To establish a claim under failure to intervene, FIELDS must demonstrate how another officer as a bystander (1) knew that a fellow officer was violating an individual's constitutional rights; (2) had a reasonable opportunity to prevent the harm; and (3) chose not to act. *See Hale v. Townley,* 45 F.3d 914, 919 (5th Cir. 1995).

44. The CITY is culpable because the HPD officers on the scene knew FIELDS was not the suspect, and allowed the attack continue for one to two minutes before they pulled the K9 off Plaintiff. *Id*. Officers are generally expected to remove a dog once it becomes clear that the suspect no longer poses an immediate threat of harm and is not actively resisting or evading arrest. *See, e.g., Edward v. Shanley*, 666 F.3d 1289, 1296 (11th Cir. 2012). With this case, FIELDS was never a suspect, never posed an immediate threat of harm, and never was actively resisting or evading arrest. FIELDS was simply an innocent bystander.

45. Because of the HPD Officers' failure to intervene, FIELDS suffered preventable physical and emotional injuries.

**COUNT 4:   CLAIM UNDER THE EQUAL PROTECTION CLAUSE AND 42 U.S.C. § 1981 AS TO DEFENDANTS FOSTER, MONTALVO, AND THE CITY OF HOUSTON – RACIAL PROFILING.**

46. The factual allegations contained in the paragraphs of this Original Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect if set forth verbatim pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

47. The Equal Protection Clause requires that similarly situated persons be treated alike. *Cleburne v. Cleburne Living Center, Inc. .,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313

(1985). To establish an equal protection claim, a plaintiff must demonstrate that (1) the state created two or more classifications of similarly situated prisoners that were treated differently; and (2) the classification had no rational relation to any legitimate governmental objective. *See Johnson v. Rodriguez*, 110 F.3d 299, 306-07 (5th Cir.1997). A plaintiff may also state an equal protection claim if he alleges he was subjected to disparate treatment motivated by ill-will. *See Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir.2000) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000))*. (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)).

48. Because Plaintiff is an African-American, FOSTER unreasonably believed him to be both the fleeing suspect and to be dangerous. This unreasonable and racist belief caused FOSTER to physically assault Plaintiff and release his police K9 to attack him. HPD's custom and practice of racial profiling is pervasive among HPD officers which makes Defendants MONTALVO and the CITY culpable as well.

49. Defendants MONTALVO, the CITY, and FOSTER are in the wrong because they violated Plaintiff's constitutional rights by incorporating the practice and custom of racial profiling.

**COUNT 5: CLAIM UNDER 42 U.S.C. § 1983 AS TO DEFENDANTS MONTALVO AND THE CITY OF HOUSTON — FAILURE TO TRAIN HOUSTON POLICE OFFICERS.**

50. The factual allegations contained in the paragraphs of this Original Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect if set forth verbatim pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

51. FOSTER's conduct toward FIELDS demonstrates how CITY's policymakers and supervisors were "deliberately indifferent" to a specific inadequacy in the training of HPD officers,

particularly Officer FOSTER and those HPD officers who witnessed the "excessive force" applied yet failed to intervene until one to two minutes had passed. *See Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Defendants MONTALVO and the CITY's failure to train their officers violate FIELDS' Fourth, Eighth, and Fourteenth Amendment rights.

52. Defendants MONTALVO and the CITY are blameworthy because (1) their training custom, policy, or practice was inadequate; (2) they were deliberately indifferent in adopting their training policy; and (3) the inadequate training policy directly caused the constitutional violation. *Kitchen v. Dallas Cty.,* 759 F.3d 468, 484 (5th Cir. 2014).

53. FIELDS asserts that (1) an acknowledged and obvious lack of training in the use of "excessive force," "unreasonable seizure," and "racial profiling" have caused HPD officers to commit similar acts like this in the past, and (2) due to this lack of training, FOSTER caused FIELDS' physical and mental injuries; and (3) Officer Mihalco, FOSTER's supervisor, admitted the need for further training.

**COUNT 6: CLAIM UNDER 42 U.S.C. § 1983 AS TO DEFENDANTS MONTALVO AND THE CITY OF HOUSTON — FAILURE TO SUPERVISE HOUSTON POLICE OFFICERS.**

54. The factual allegations contained in the paragraphs of this Original Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect if set forth verbatim pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

55. Defendants MONTALVO and the CITY failed to properly supervise FOSTER and the other HPD officers that were present during the attack. Defendants' MONTALVO and the CITY failure to supervise is a developed and maintained custom, policy, and practice exhibiting deliberate indifference to FIELDS' Fourth, Eighth, and Fourteenth Amendment rights.

56. To state a claim against Defendants, FIELDS must identify an official policy or custom of the city's policymaker that caused the plaintiff to be subjected to a deprivation of a constitutional right. *See Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987) (quoting *Grandstaff v. City of Borger, Texas*, 767 F.2d 161, 169 (5th Cir. 1985)).

57. FIELDS asserts that Defendants MONTALVO and the CITY have maintained a persistent and widespread custom, policy and practice of failing to supervise HPD officers who (i) use excessive force, (ii) commit unreasonable seizures, (iii) engage in racial profiling, and/or (iv) fail to intervene when other officers use excessive force.

58. Upon information and belief, Defendants MONTALVO and CITY were aware of FIELDS' claim of injuries and did not ensure that FOSTER's attack on FIELDS was properly documented. Several officers were falsely listed in the incident report even though they were not present at the scene. Further, the HPD officers who were present at the scene were falsely removed from the report. This complete absence of accountability in requiring HPD officers to report injuries and submit documentation demonstrates that HPD officers are not properly supervised and the official policies and procedures will not be enforced. This approach also ratifies the custom or practice whereby officers are permitted to use excessive force without being subject to any consequences.

**COUNT 7:  CLAIM UNDER 42 U.S.C. § 1983 AS TO DEFENDANTS MONTALVO AND THE CITY OF HOUSTON — FAILURE TO DISCIPLINE HOUSTON POLICE OFFICERS.**

59. The factual allegations contained in the paragraphs of this Original Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect if set forth verbatim pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

60.     Pursuant to official custom, policy, or practice, Defendants MONTALVO and the CITY failed to discipline FOSTER and the other HPD officers for their separate roles in the attack on FIELDS. Defendants' MONTALVO and the CITY failure is a violation of FIELDS' Fourth, Eighth, and Fourteenth Amendment rights.

61.     FIELDS asserts that Defendants MONTALVO and the CITY have maintained a persistent and widespread custom, policy, or practice of failing to discipline HPD officers who (i) use excessive force, (ii) commit unreasonable seizures, (iii) engage in racial profiling, and/or (iv) fail to intervene when other officers use excessive force.

62.     Defendants MONTALVO and the CITY continued this custom, policy, or practice by failing to perform a thorough investigation immediately after the attack. Defendants' MONTALVO and the CITY actions were a customary practice and/or policy or procedure carried out with deliberate indifference out of which deprived FIELDS of his constitutional rights.

**COUNT 8:     CLAIM OF ASSAULT & BATTERY UNDER TEXAS COMMON LAW AS TO DEFENDANT FOSTER.**

63.     The factual allegations contained in the paragraphs of this Original Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect if set forth verbatim pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

64.     Texas Common Law defines an assault as (1) an apprehension of (2) an immediate battery; similarly, the elements for battery are (1) a harmful or offensive contact (2) with a plaintiff's person. *Jackson v. Texas Southern Univ.*, 997 F.Supp.2d 613, 632 (S.D.Tex.2014), *citing Doe v. Beaumont I.S.D.,* 8 F.Supp.2d 596, 616 (E.D.Tex.1998).

65. Police officers are immune from liability due to their privileged status as law enforcement as long as they use "reasonable force" in making an arrest. *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

66. FOSTER, in his capacity as an HPD officer, cannot claim he is immune from liability officer because he failed to use reasonable force. *Spencer v. Rau*, 542 F.Supp.2d 583, 593 (W.D.Tex. 2007), *citing Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002) ("To establish good faith, Officer Telthorster must show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred.").

67. FOSTER used unreasonable force and thereby committed an assault and battery on FIELDS when he:

   i. Approached Plaintiff with the clear threat of engaging in a physical confrontation;

   ii. Threatened releasing the police K9 to intimidate FIELDS and cause him to seek higher ground on top of the nearby car;

   iii. Choked and tackled Plaintiff even though he was not the suspect and did not match the suspect's physical description;

   iv. Released the police K9 to attack and maul Plaintiff;

   v. Allowed the police K9 to continue the attack Plaintiff for one to two minutes.

68. Even if FIELDS was the suspect in question, FOSTER committed an assault and battery because his use of force was unreasonable given the circumstances that FIELDS was unarmed, posed no threat, and clearly not trying to flee the scene.

## V.
## DAMAGES

69. Plaintiff sustained both physical and mental injuries as a direct result of the actions and/or omissions of the Defendant described hereinabove.

70. Plaintiff requests the following relief:

    i. Mental anguish, impairment, and suffering in the past and future;

    ii. Physical pain, impairment, and suffering in the past and future;

    iii. Disfigurement in the past and future;

    iv. Reasonable medical care and expenses in the past and future. These expenses were incurred by Plaintiff and such charges were reasonable, usual, and customary for such services in Harris County, TX;

    v. Loss of earnings in the past and future;

    vi. All reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiff;

    vii. All reasonable and necessary costs incurred in pursuit of this suit;

## VI.
## EXEMPLARY DAMAGES

71. Plaintiff re-alleges and incorporates the previous paragraphs herein by reference as if stated verbatim pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

72. Plaintiff would further show that the following acts and omissions were committed with malice and reckless indifference to the protected rights of the Plaintiff:

    i. Officer FOSTER physically assaulted Plaintiff without provocation or warning;

    ii. Officer FOSTER released the K9 to "bite and hold" Plaintiff even though Plaintiff was not a suspect, was not seeking to evade arrest, had his hands raised in a submissive position, and posed no visible threat or harm;

    iii. Officer FOSTER released K9 on Plaintiff and failed to control it in a reasonable manner as it continued to bite Plaintiff for 1-2 minutes.

73. In order to punish the Defendants for engaging in unlawful vicious attacks, and to deter such actions and/or omissions in the future, Plaintiff seeks recovery of exemplary damages from Defendants.

## VII.
## ATTORNEYS' FEES

74. Plaintiff is further entitled to receive his reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## VIII.
## JURY DEMAND

75. Plaintiff respectfully demands that this action be tried before a jury.

## IX.
## CONCLUSION

76. In conclusion, Plaintiff, DWIGHT LEMAN FIELDS, respectfully urges the Defendants to be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Plaintiff against the Defendants for damages in an amount within the jurisdictional limits of the Court; exemplary damages, attorneys' fees, together with pre- and post-judgment interest as allowed by law, costs of court, and other such further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

By: /s/ Edward C. Tredennick
Edward C. Tredennick
DANIELS & TREDENNICK LLP
State Bar No. 24070760
Federal I.D. No. 1312377
6363 Woodway, Suite 965
Houston, Texas 77057
713.917.0024
713.917.0026 (fax)

        Ted@DTLawyers.com
        **ATTORNEY-IN-CHARGE FOR PLAINTIFF**

**OF COUNSEL:**

DANIELS & TREDENNICK LLP
Douglas A. Daniels
State Bar No. 00793579
Federal I.D. No. 19347
Doug.Daniels@DTLawyers.com
6363 Woodway, Suite 965
Houston, Texas 77057
713.917.0024
713.917.0026 (fax)

THE LAW OFFICES OF JEREMY A. WILLIAMS, PLLC
Jeremy Williams
State Bar No. 24090467
Federal I.D. No. 2639638
jwilliams@jawpllc.com
5100 Westheimer Rd., Suite 200
Houston, Texas 77056
832.299.5242
832.284.7047 (fax)